## PETERS *v.* FOSS *et al.*

WHERE in an action for breach of a verbal contract, there was a slight difference between the statement in the complaint and that in the answer of the promises on the part of the plaintiff which were the consideration of defendants, promise, but no issue was raised by the answer as to the performance by plaintiff of his promises, and on the trial plaintiff rested without proof as to the consideration— *Held*, that under the pleadings, the absence of proof on this point was not ground for a nonsuit.

The seventy-first section of the Practice Act, requiring the Courts to disregard errors not affecting substantial rights, applies to errors of description in a pleading as well as to errors in other respects.

Thus, where in an action on a verbal contract, the complaint alleged several distinct promises on the part of defendants, which were denied by the answer, and on the trial the plaintiff introduced no proof, except as to one of the promises : *Held*, that this was not ground for a nonsuit; that the provision of the Practice

Peters *v.* Foss.

Act above referred to required a rc¹ ⸍tion of the common law rule respecting a variance; and that, it being apparent that defendants were not surprised or prejudiced by the failure of proof, the error in stating the agreement should have been disregarded.

APPEAL from the Tenth Judicial District.

The complaint sets forth that in October, 1858, the plaintiff John Peters and one McCall were the owners of certain valuable mining claims situated on the east branch of Oregon Creek, in Yuba County, known as Peters & Co.'s claims, and were engaged in working the same, and had at much expense constructed a tail-race, and also a ditch, for the purpose of bringing upon their claims the waters of said stream, to the use of which they had the prior right; that the defendants, Harlow Foss and others, were at the same time the owners of a tract of claims in the same stream lying above the Peters & Co. claims, and wishing the privilege of building a flume across the lower claims, and of using the tail-race of Peters & Co. to carry off the tailings of their claims above, and also of diverting into a ditch and flume to be made by them (defendants) all the water of the stream, made a verbal agreement with plaintiff and his partner McCall, (styled Peters & Co.) the terms of which are stated in the complaint as follows.

" That the said Peters & Co. should permit them (defendants) to enter into and upon their mining claims aforesaid, to remove and permit them to remove the flume constructed by said Peters & Co., and to construct a flume of larger size in the place thereof; and it was further agreed by and between them, that the said Foss & Co. should be permitted to make a cut-ditch or tail-race through their mining claims, and to enlarge and use the tail-race of the said Peters & Co., and to place their flume, to be constructed as aforesaid, in the same ; and this plaintiff further avers that it was further agreed by and between the said Peters & Co. and the said Foss & Co., that Peters & Co. should suspend all labor on their mining claims for the period of two weeks, so as to enable them to perform their part of the contract without hinderance or interruption. And this plaintiff further avers, that in consideration of the performance by the said Peters & Co. of their part of the contract, the said Foss & Co. agreed that they should not be prevented from working their

claims for a longer period than two weeks; and further promised and agreed to construct a flume as aforesaid, in the shortest possible time, and to furnish to the said Peters & Co. upon their mining claims all the water they were entitled to by virtue of their prior appropriation, or so much thereof as they might require to work their mining claims, and to pay to them the full value of their tail-race, and all damages they might sustain by reason of said cut or ditch, or by a cessation of labor thereon, or any damages they might sustain to their mining ground either by the construction of said flume, the excavation of said ditch or cut, or by their cessation of work thereon."

The complaint then avers that, with this agreement, Peters & Co. complied in every respect, and alleges specifically a breach by defendants of each of the promises on their part, and a damage to Peters & Co. resulting therefrom of $1,800 ; and that before the action was commenced, McCall sold to plaintiff all his interest in the claims and in the contract.

The answer admits most of the facts stated in the complaint as the inducement to the contract, but denies the prior right of Peters & Co. to the use of the waters of the stream, and claims that priority for defendants. It admits also the allegations in the complaint concerning the verbal contract, so far as the promises on the part of Peters & Co. are concerned, except in relation to the time for which Peters & Co. were to suspend work, which time it avers to have been indefinite, instead of having been fixed at two weeks. It denies all of the promises on the part of defendants alleged in the complaint, and avers that the only agreement on the part of defendants was to permit Peters & Co. to use the race which was to be dug by defendants for the purpose of carrying off the tailings of Peters & Co.'s claims, and avers a performance of this stipulation.

On the trial, the plaintiff introduced as a witness one McDaniels who testified as follows :—

" That he knew the parties in this suit, and knew the mining claims of plaintiff and defendants; that he heard Charles Smith, one of the defendants, at the cabin of Peters, prior to the commencement of this suit, and shortly after defendants had commenced the cut through plaintiff's mining claims, say to Peters : ' If you will

hold on, and let us go on with our cut, we will furnish you water from our ditch, and you shall not be the loser.' That Peters & Co. had built a flume, and prior to the construction of the flume by Foss & Co. through their claims, used the water of the east branch of Oregon Creek in working those claims after it left the flume of defendants above. That after the excavation of the cut through Peters & Co.'s claims, the water of that creek ran all the way through defendant's flume, and plaintiff could not use it. That he (Peters) was compelled to purchase water to work his claims, and did purchase water from a ditch company. That he used about fifty inches per day, and that the same was worth at that time ten cents per inch. That he used said water about four months in working his claims. That Foss & Co., after the conversation testified to, went on and completed the cut through the claims. That Peters & Co. suspended work on the claims about two months. That Foss & Co., after the completion by them of the cut through plaintiff's claims, turned all the water of the stream into the cut made by them, so that plaintiff could not use it. That Peters asked Smith at the time of the conversation testified to, how much water his ditch would furnish until July, and Smith replied that if it was anything of a season for water, he thought it would furnish from forty to fifty inches."

Plaintiff then called Thomas Mitchell, who testified that he heard Harlow Foss, one of the defendants, while they were making a cut through plaintiff's claims, say to his brother that he was going to let Peters & Co. have some water this winter, and the brother replied : " That's right, you ought to ; you would not have gained the law suit at the Indiana Rancho but for their testimony."

On this evidence, plaintiff rested.

Defendants then moved the Court for a nonsuit, on the ground that he had failed to prove a contract of the character stated in the complaint; which motion was granted by the Court, and judgment accordingly entered in favor of defendants for costs. From this judgment, plaintiff appeals.

*Henry C. Mitchell*, for Appellant.

*Belcher & Belcher*, for Respondents, cited Philips on Ev. 837 ;

*Hughes* v. *Parker*, 8 M. and W. 244 ; 1 Greenleaf on Ev., secs. 66, 67 & 68 ; and cases there referred to.

COPE, J. delivered the opinion of the Court—NORTON, J. concurring.

The complaint in this case alleges that the defendants, in consideration that the plaintiff would allow them to construct a flume upon certain mining claims owned by the latter, and would suspend operations upon the claims for the period of two weeks to enable them to do so, promised, etc. It avers performance by the plaintiff, and alleges that the defendants constructed the flume, but not within the period agreed on, and that they have not complied with any of the conditions of the agreement on their part. The answer admits the construction of the flume, and admits the agreement allowing it to be constructed, and to suspend operations upon the claims for that purpose, but denies that the suspension was to be limited to the period of two weeks. It avers that the suspension was to continue so long as the defendants should be occupied in constructing the flume, and denies each and every promise alleged to have been made by them in consideration of the agreement. Several promises are alleged, and among them a promise to supply the plaintiff with water to work his claims ; and evidence was introduced at the trial tending to sustain the complaint in this respect. No other evidence was offered; and on motion of the defendants, the Court granted a nonsuit, upon the ground that the agreement had not been proved.

The conditions on behalf of the plaintiff are admitted, except in one particular; and the difference between the agreement alleged and that admitted, so far as these conditions are concerned, would seem to be immaterial. There is no pretense of any failure to perform, nor of any variance between the pleadings and the proof, and the most that can be said is, that the agreement as admitted in the answer differs to some extent from the agreement as stated in the complaint. As there is no question of performance, however, we think the difference is not such as entitled the defendants to a nonsuit; for it is evident that they could not have been taken by surprise, and the rule in case of a variance does not apply.

Hall *v.* Supervisors of San Francisco.

The principal difficulty arises in regard to the conditions to be performed by the defendants, the complaint alleging several distinct promises, and the evidence being confined to one of these promises only.   Greenleaf, in his work on Evidence, says that in such a case the promises are descriptive of the contract, and must be proved as alleged; and this view appears to be in accordance with the authorities cited.   (See 1 Greenleaf on Ev., secs. 66, 67, 68.)   The seventy-first section of the Practice Act provides that " the Court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings, which shall not affect the substantial rights of the parties; and no judgment shall be reversed or affected by reason of such error or defect."   This provision is sufficiently broad to cover the objection taken, and we think should be applied to errors of description as well as to errors in other respects.   The defendants were neither surprised nor prejudiced by the failure of proof; and the error in stating the agreement, if there be any, is an error which the Court should have disregarded.

The judgment is reversed, and the cause remanded for a new trial.